IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANNA JESSOP, et al. | : | CIVIL ACTION |
| v. | : | No. 16-1232 |
| JEH JOHNSON, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                                                                   July 10, 2017

      Plaintiffs Anna and Macborne Jessop, natives of Saint Vincent and living in Philadelphia, Pennsylvania, have been married for over six-and-a-half years and have two children. In 2013, Ms. Jessop applied for adjustment of status to lawful permanent resident under the Administrative Procedures Act (APA), 5 U.S.C. § 706(2)(A)-(B), based on her status as the spouse of Mr. Jessop, a United States citizen. The United States Citizenship and Immigration Services (USCIS) denied Ms. Jessop's application in 2015. The Jessops subsequently filed the instant action, requesting review of the denial decision, and the parties have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. The Government argues the Court should uphold USCIS's decision denying Ms. Jessop's application. The Jessops argue USCIS erred in denying Ms. Jessop's application because she is a spouse of a United States citizen and was "inspected and admitted or paroled into the United States," as required under 8 U.S.C. § 1255(a), and the Court should therefore reverse the Agency's decision or remand this matter to USCIS for the proper adjudication of Ms. Jessop's application.[1] Because the Court

---

[1] The relief Plaintiffs seek has varied throughout the course of this matter. In their Complaint, Plaintiffs request the Court direct Defendants to grant the underlying application for adjustment of status. In their brief in support of their motion for summary judgment, Plaintiffs request the Court remand this matter to USCIS. In their most recent letter brief to the Court, Plaintiffs assert the proper remedy is not remand but direct review, and argue the Court should first provide a hearing or order depositions in order to acquire evidence concerning the USCIS's decision-making process.

finds USCIS's adjudication of Ms. Jessop's application was not in accordance with agency regulations, the Government's motion for summary judgment will be denied and the Jessops' motion for summary judgment will be granted insofar as this matter will be remanded to USCIS.

**FACTS**[2]

Anna Jessop entered Canada on March 26, 2002. In a September 22, 2013, sworn statement, Ms. Jessop asserts she stayed with friends in Canada for a month, until she boarded a bus headed to the United States to visit friends in Philadelphia. Ms. Jessop further asserts, in her sworn statement, that United States immigration officers stopped the bus at the Canada-United States border, inspected her Saint Vincent passport, and allowed her to continue to Philadelphia without providing her documentation of her entry.[3] Upon her arrival in Philadelphia, Ms. Jessop stayed with friends for nine months.

On October 10, 2010, Ms. Jessop married Macborne Jessop, an American citizen, and in November 2013, Ms. Jessop filed with USCIS an Application to Register Permanent Residence or Adjust Status (Form I-485) based upon her status as the spouse of Mr. Jessop. On December 4, 2013, USCIS requested that Ms. Jessop provide evidence of her lawful admission or parole

---

[2] When reviewing cross-motions for summary judgment, the "court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Schlegel v. Life Ins. Co. of N. Am.*, 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed. 1998)); *see also Appoloni v. United States*, 450 F.3d 185, 189 (6th Cir. 2006) (noting a court must evaluate each cross-motion for summary judgment "on its own merits and view all facts and inferences in the light most favorable to the nonmoving party" (internal quotation marks and citation excluded)). The facts presented herein are undisputed, except where noted.

[3] Although U.S. Customs and Border Protection inspectors are required by law to inspect every applicant for admission to determine if they are admissible and to create a record of admission for each person admitted, *see* INA §§ 235(a)(3), 290(a), the parties agree there is no record of Ms. Jessop's admission into the United States.

into the United States. Ms. Jessop provided a copy of her September 22, 2013, sworn statement detailing her entry into the United States.

On February 5, 2014, USCIS denied Ms. Jessop's application, asserting she had failed to submit evidence of her lawful admission or parole into the United States, and had thus failed to establish her eligibility for adjustment of status. In April 2014, the Jessops filed in federal court a complaint, which was voluntarily dismissed by stipulation after USCIS agreed to reopen the immigration proceedings. On August 6, 2014, a USCIS officer interviewed Ms. Jessop. During the interview, Ms. Jessop recounted the same manner of entry at the Canada-United States border detailed in her September 22, 2013, sworn statement and said she had since lost the Saint Vincent passport she used to enter Canada in 2002. She further told the officer that she stayed with a friend in Philadelphia for nine months upon her arrival in 2002, but she could not remember the name of that friend, or the name of the friend she stayed with in Canada.[4] After the interview, the Agency issued a Request for Evidence, noting Ms. Jessop had failed to submit any evidence, independent of her own testimony and written statements, supporting her asserted manner of entry into the United States. In response, the Jessops provided a Canadian entry report showing Ms. Jessop entered Canada on March 26, 2002, and two photographs of Ms. Jessop in Philadelphia from May 2002. To further corroborate Ms. Jessop's account of her entry into the United States, the Jessops cited to the November 2007, report issued by the United States Government Accountability Office (GAO Report), which discusses weaknesses in traveler

---

[4] The facts of the August 6, 2014, interview are drawn from the officer's handwritten notes, the Agency's January 6, 2015, decision letter, and its statement attached to its Request for Evidence. The Jessops argue that such a record is insufficient and these facts are thus disputed or unproven, as the interview was not recorded by videotape. As discussed *infra*, the Court finds USCIS was not required to videotape the interview, and here, the record sufficiently indicates Ms. Jessop could not provide her friends' names or where they lived. *See* USCIS 0018, 0030, 0040.

inspection at the United States borders. USCIS denied the petition on January 6, 2015. The Jessops timely filed a request for reconsideration, which USCIS denied on November 16, 2015.

The Jessops initiated this action on March 17, 2016. On June 20, 2016, the Court remanded the matter to USCIS, without vacating the Agency's decision denying Ms. Jessop's adjustment of status application, for the limited purpose of having the Agency issue a finding as to Ms. Jessop's credibility concerning her account of her entry and manner of inspection and admission into the United States. On August 18, 2016, USCIS issued a finding that Ms. Jessop's account was not credible.

The Jessops allege the Government's denial of Ms. Jessop's application was in violation of the Administrative Procedures Act (APA), 5 U.S.C. 706(2)(A) and (B). The parties have filed cross motions for summary judgment, asking the Court to determine whether USCIS lawfully denied Ms. Jessop's adjustment application.

**DISCUSSION**

Summary judgment shall be granted if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because the Jessops are seeking review under the APA, however, "the usual summary judgment standard does not apply." *Uddin v. Mayorkas,* 862 F. Supp. 2d 391, 399 (E.D. Pa. 2012). Under the APA, the Court performs a limited review to decide "whether [the] agency's action is supported by the administrative record and consistent with the APA standard of review." *Dorley v. Cardinale*, 119 F. Supp. 3d 345, 351 (E.D. Pa. 2015); *see also Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769-70 (9th Cir. 1985) ("[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."); *Singh v. Holder* (E.D. Pa. Dec. 2, 2015) (stating that in

reviewing an agency decision under the APA, "the administrative agency is the finder of fact, and the district court does not need to determine whether there are disputed facts to resolve at trial"). "Under the APA, a district court may only hold unlawful and set aside agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,'" *Dorley*, 119 F. Supp. 3d at 352 (quoting 5 U.S.C. § 706(2)(A)), a standard that is "'exceedingly deferential' to the agency," *Johnson v. Dist. Dir. of United States Citizenship*, No. 15-62420, 2016 WL 5390572, at *4 (S.D. Fl. Sept. 27, 2016) (quoting *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996)).

To determine whether an agency acted arbitrarily and capriciously, a court must consider whether there exists a "rational connection between the facts found and the choice made[,] . . . whether the decision was based on a consideration of the relevant factors[,] and whether there has been a clear error of judgment." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks and citation omitted); *see NVE, Inc. v. Dep't of Health and Human Servs.*, 436 F.3d 182, 190 (3d Cir. 2006) (noting that in applying the arbitrary and capricious standard, "a court looks to whether the agency relied on factors outside those Congress intended for consideration, completely failed to consider an important aspect of the problem, or provided an explanation that is contrary to, or implausible in light of, the evidence."). An agency's decision is arbitrary and capricious where "the evidence not only supports a contrary conclusion but compels it." *Yitang Sheng v. Attorney Gen. of U.S.*, 365 F. App'x 408, 410 (3d Cir. 2010).

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43; *see NVE, Inc.*, 436 F.3d at 190 (noting judicial review of administrative action in

an APA case is "limited to the administrative record"). Although a reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given," it may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43. A court "reverse[s] an agency's decision when it is not supported by substantial evidence, or the agency has made a clear error in judgment." *United States v. Reynolds*, 710 F.3d 498, 509 (3d Cir. 2013).

Even where a court finds error in an agency's judgment, reversal or remand is warranted only when the error actually prejudices the party. *See* 5 U.S.C. § 706 (providing that a court must take "due account . . . of the rule of prejudicial error"). The rule of prejudicial error requires courts to "determine whether the agency's error is harmless." *Reynolds*, 710 F.3d at 514 (citing *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)); *see also Del. Riverkeeper Network v. Sec'y Pa. Dep't of Envtl. Prot.*, 833 F.3d 360, 377 (3d Cir. 2016) (noting that in reviewing an agency decision under the APA, courts apply a "harmless error" analysis, and while "mistakes that have no bearing on the substantive decision of an agency do not prejudice a party[,] . . . [w]here an agency errs in fact finding, we remand only if the agency relied on the erroneous finding in its decision"). Specifically, an agency's failure to follow its procedural rules may be grounds for reversal when it results in prejudice or the denial of a party's rights. *See Connor v. U.S. Civil Service Com'n,* 721 F.2d 1054, 1056–1057 (6th Cir. 1983) ("An agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.").

An alien may seek adjustment of status under § 245(a) of the Immigration and Nationality Act (INA) so long as she was inspected and admitted or paroled into the United

States.[5] *See Matter of Quilantan*, 25 I. & N. Dec. 285, 289-90 (BIA 2010). In other words, an alien whose entry was procedurally regular—being inspected by an immigration officer and thereby physically presenting herself for questioning—is eligible for adjustment, even if she was not in compliance with substantive legal requirements at the time of entry. *See id.*; *see also Tula Rubio v. Lynch*, 787 F.3d 288, 292 (5th Cir. 2015) (affording deference to *Quilantan*'s holding that "inspected and admitted" refers to a procedurally proper admission). The applicant for adjustment of status bears the burden of demonstrating that she presented herself for inspection and was admitted or paroled upon her entry into the United States. *See Matter of Areguillin*, 17 I. & N. Dec. 308, 310 (BIA 1980).

Ms. Jessop contends she established her eligibility for adjustment of status by sufficiently demonstrating her inspection and admission into the United States to USCIS, and reversal or remand of her case is warranted because (1) the Agency has failed to develop or present a sufficient record for the Court to review and (2) the Agency failed to comply with applicable legal standards in rendering its decision to deny her application.

Having remanded this matter to the Agency for a credibility determination, which it provided, the Court finds the administrative record now adequate for its review.[6] The Jessops

---

[5] Section 245(a) states:
> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

INA § 245(a), 8 U.S.C. § 1255.

[6] The Court notes that although the credibility determination may be viewed as a post hoc rationalization, generally disfavored in reviewing an agency's decision, *see Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 850–51 (3d Cir. 1999) ("[T]he district court properly ruled that it

argue that pursuant to USCIS policy, the Agency should have videotaped Ms. Jessop's interview, allowing the Court to assess the contested testimony, but while such recording may be strongly recommend, it is not required.[7] In any event, while a videotaped interview may tend to show the Agency has followed proper internal procedures, the Court may not reweigh Ms. Jessop's credibility or make factual determinations. *See Reynolds*, 710 F.3d at 509. Any videotaped interview would thus have no bearing on the Court's review of the Agency's decision.

The Jessops next argue the Agency failed to follow two legal standards in determining Ms. Jessop's statutory eligibility to adjust her status to lawful permanent resident. First, they argue there is no requirement for an applicant to provide documentary corroboration of her entry

---

would not create a new record nor base its review on any 'post-hoc rationalizations' made by the Department after it had taken the disputed action."), courts may request an "administrative body to provide additional explanation for an inadequately articulated decision," *Local 814, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen v. N. L. R. B.*, 546 F.2d 989, 992 (D.C. Cir. 1976) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)). "The 'post hoc rationalization' rule is not a time barrier which freezes an agency's exercise of its judgment after an initial decision has been made and bars it from further articulation of its reasoning. It is a rule directed at reviewing courts which forbids judges to uphold agency action on the basis of rationales offered by anyone other than the proper decisionmakers." *Id.*; *see also Marshall v. Lansing*, 839 F.2d 933, 943-44 (3d Cir. 1988) (noting the concern with post hoc rationalizations of administrative agency decisions is to avoid "hypothetical rational support for the agency's action," as a court may only review "a formal statement of reasons from the agency" that sets forth it decision "with such clarity as to be understandable"). Here, USCIS has provided an on-the-record credibility decision that provides additional explanation and clarification of its prior denial decision.

[7] The USCIS Adjudicator's Field Manual (AFM) sets forth policies and procedures for recording applicant interviews. *See* USCIS Adjudicator's Field Manual Ch. 11.2(a) ("In many instances the adjudicator may audio or video tape an interview with an applicant or petitioner. The purpose of such a recording is to preserve evidence for possible use in later proceedings . . . ."), 15.6(b) ("The ideal format for most interviews and simple statements in most situations is *videotape*. Videotape records not only the answers, but also the demeanor and actions of the interviewee. Properly done, there can be no doubt as to what the interviewee actually said or did." (alteration in original)), https://www.uscis.gov/ilink/docView/AFM/HTML/AFM/0-0-0-1.html (last visited May 25, 2017). The Court notes that while the AFM is instructive as to proper agency practice, it does not hold authority over this Court. *See Lawrence v. City of Philadelphia*, 527 F.3d 299, 316 n.6 (3d Cir. 2008) ("[A]gency manuals . . . lack the force of law[.]").

8

where no official document relating to admission exists, and credible testimony is sufficient to establish her manner of entry. *See* Pls.' Mem. of Law in Supp. of Mot. for Summ. J. 12-13 (citing *Matter of Arreguillin* and *Matter of Quilantan*). Second, they argue USCIS failed to cite or apply the correct standard for determining credibility, pursuant to *Matter of A-S*, 21 I&N Dec. 1106, 1109 (BIA 1998). The Jessops argue that under the correct legal standards, Ms. Jessop has met her burden to prove by a preponderance of the evidence that she was inspected at the United States border.

USCIS denied Ms. Jessop's adjustment of status application based on Ms. Jessop's affidavit, an entry document from the Canadian Border Services, the two 2002 photographs depicting Ms. Jessop in Philadelphia, the GAO Report, and the lack of any documentation corroborating her asserted manner of entry. USCIS Mot. to Reconsider Letter, USCIS 0002; *see also* USCIS Decision Letter 2, January 6, 2015, USCIS 0017 ("[B]ased on the evidence of record, USCIS finds that you have not proven by a preponderance of the evidence that you presented yourself for inspection upon your entry."). In its decision letter, the Agency noted Ms. Jessop's narrative was "plausible," but that she nevertheless failed to demonstrate it was more likely than not that she was inspected and admitted or paroled into the United States. USCIS Decision Letter 3.

Following the Court's Order remanding this matter to USCIS for the limited purpose of having the Agency issue a finding as to Ms. Jessop's credibility, the Agency set forth in an August 18, 2016, credibility finding the reasons it did not credit Ms. Jessop's account of her manner of entry: (1) discrepancies between Ms. Jessop's testimony and affidavit, including her purported date of entry into the United States and the number of friends she stayed with in Canada and Philadelphia; (2) Ms. Jessop was unable to recall the names, contact information, or

current whereabouts of her friends with whom she had purportedly stayed for extended periods in Canada and Philadelphia; and (3) the improbability of the circumstances of her purported admission, which would have involved "an obvious and egregious violation of the most basic training border officials receive." USCIS Credibility Finding 2-4.

Based on the record before it, the Court finds no clear error in the Agency's decision. The Agency provided an adequate explanation of its denial decision, noting the lack of evidence Ms. Jessop provided to establish her manner of entry. Indeed, her corroborating evidence—a document of entry in Canada and photographs of herself in Philadelphia in 2002—do not bear on her manner of entry into the United States. Further, in its credibility finding, the Agency identified sufficient grounds for discrediting Ms. Jessop's version of the events, including her inability to name the friends she stayed with in Canada and Philadelphia, and the discrepancies identified in her testimony and affidavit. The Agency also considered the GAO Report,[8] but found the weaknesses in border inspection documented in the Report—insufficient staffing, training, and infrastructure—were not relevant to Ms. Jessop's entry into the United States, which, by her account, involved officers examining Ms. Jessop's passport and knowingly allowing her to unlawfully enter. *See* USCIS Credibility Determination 3-4, Aug. 19, 2016. Evident from its detailed decision, the Agency had a "rational connection between the facts found and the choice made" to deny her application, *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463

---

[8] The GAO Report states that U.S. Customs and Border Protection (CBP) "estimated that several thousand inadmissible aliens and other violators entered the county through ports of entry in fiscal year 2006." Pl.'s Mem. of Law in Support of Mot. for Summ. J. Ex. 2, GAO Report 2. The Report notes weaknesses in 2006—staffing shortages, lax traveler inspection procedures, and a lack of physical infrastructure to ensure vehicles pass through a CBP inspection booth—which allowed many vehicles to pass through check points without being stopped or inspected. *Id.* at 5-6, 23-24.

U.S. at 43, which is "the hallmark of reasonable agency decision," *Dorley*, 119 F. Supp. 3d at 354.

The Court notes there is a dearth of case law establishing the minimum amount of corroborating evidence a petitioner may provide to meet her burden of proof to show the procedural regularity of her inspection.[9] In a recent decision, however, the Southern District of Florida concluded an applicant for adjustment of status, lacking any documentation to establish her inspection and admission into the United States and relying on her own testimony and that of her friend and sister-in-law, failed to meet her burden to establish the Agency's denial was arbitrary, capricious, or an abuse of discretion. *Johnson*, 2016 WL 5390572, at *5 ("While the BIA and USCIS have found an applicant's own testimony sufficient to establish a procedural admission into the United States under certain circumstances, 'the mere fact that the record may support a contrary conclusion is not enough' for the Court to invalidate the USCIS's decision in this case."). Thus, even if an applicant's testimony alone may be sufficient to establish the procedural regularity of an alien's admission, in this case, the Agency found Ms. Jessop's testimony insufficient due to its lack of credibility. That decision was not arbitrary and capricious.

---

[9] The Jessops argue there is no requirement that an alien provide any documentary corroborating evidence where no official document or other record of entry exists, and that she may establish her admission by credible testimony alone. *See* Pls.' Mem. of Law in Supp. of Mot. for Summ. J. 12-13 (citing *Matter of Quilantan*, 25 I. & N. Dec. at 293). Although the Board of Immigration Appeals in *Matter of Quilantan* suggests an alien's testimony alone, without corroboratory documentation, may be sufficient to establish procedural regularity, other courts have found an immigration judge did not err by finding an alien's testimony, without more, insufficient to establish his or her burden. *See, e.g.*, *Rosario-Rosario v. Attorney General of U.S.*, 604 F. App'x 205, 207 (3d Cir. 2015) (affirming the immigration judge's decision to sustain the petitioner's removal because of various inconsistencies in her testimony concerning her flight to the United States and lack of documentary evidence that she had so traveled).

Although the Agency did not set forth a standard in its credibility finding, the Court finds the Agency adequately explained its reasoning and, as discussed above, had sufficient grounds to discredit Ms. Jessop's version of events.[10] *See Rosario-Rosario v. Attorney General of U.S.*, 604 F. App'x 205, 207 (3d Cir. 2015); *In re: Matter of Vasile Rachita*, 2014 WL 7508417, at *1-2 (BIA 2014) (finding applicant lacked credibility where he claimed, based only on an affidavit and a friend's affidavit and no corroborating evidence in the form of official documentation, his vehicle was waived through a Washington state port of entry without being stopped or questioned); *In re: Aziza Ben Harkins*, 2015 WL 34887 (BIA 2015) (finding applicant's testimony and the affidavit of her traveling companion not credible where accepting applicant's account would have required the finding that the immigration officer who inspected the applicant, and allowed her admission without the required visa, was in dereliction of his duties). The Court therefore "cannot say that a reasonable fact-finder would be compelled to 'reach factual findings contrary to those reached by'" the Agency. *Rosario-Rosario*, 604 F. App'x at 208 (quoting *Garcia v. Att'y Gen.*, 665 F.3d 496, 502 (3d Cir. 2011)).

Despite the legal sufficiency of the content of the Agency's denial decision, the Court finds the Agency afforded Ms. Jessop inadequate process. Relying on 8 C.F.R. 103.2(b)(16)(i),

---

[10] The Jessops argue the Agency failed to apply the proper standard for determining credibility, asserting *Matter of A-S* sets forth the standard the Agency should have applied in making its credibility decision. That standard, however, is applied in the asylum context, and, moreover, has since been modified by the REAL ID Act for asylum applications that were filed after May 11, 2005. *See Pavlov v. Atty. Gen. U.S.*, 614 F. App'x 55, 60 (3d Cir. 2015) (citing 8 U.S.C. § 1158(b)(1)(B)(ii)). In any event, the Court's review of the Agency's decision remains unchanged because the Agency's finding is supported by the record, as discussed above. *See Pavlov*, 614 F. App'x at 60 ("Generally, the IJ's overall credibility determination 'is more properly decided on the cumulative effect of the entirety of the [applicant's testimony]' rather than on each individual element. This Court generally defers to the IJ on credibility questions where the IJ's findings and conclusions are supported by the record." (alteration in original) (quoting and citing *Jishiashvili v. Att'y Gen.*, 402 F.3d 386, 396 (3d Cir. 2005); *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003)).

the Jessops argue the record is incomplete insofar as USCIS failed to provide the Jessops with notice of its credibility concerns or an opportunity to explain any discrepancies in her testimony prior to the August 18, 2016, denial decision.

Where USCIS's decision will be adverse to an alien's application, it is required to offer the applicant an opportunity to inspect and rebut any "derogatory" information or evidence USCIS has considered. 8 § C.F.R. 103.2(b)(16)(i).[11] Further, "[a]ny explanation, rebuttal, or information presented by or on behalf of the applicant . . . shall be included in the record of proceeding." *Id.* Here, USCIS based its decision on the lack of documentary evidence supporting Ms. Jessop's account of her manner of entry into the United States and its finding that her account was not credible. *See* USCIS 0018-19; USCIS Credibility Determination, Aug. 19, 2016. USCIS's adverse credibility determination was based on discrepancies between Ms. Jessop's testimony and affidavit, her inability to remember the names of those she stayed with in Canada and Philadelphia, and the improbability of the circumstances of her purported entry. *See* USCIS Credibility Determination, Aug. 19, 2016. Although this information was critical to USCIS's decision to deny Ms. Jessop's application—as "the only evidence [she] ha[d] to offer regarding [her] entry to the United States [wa]s [her] own account"—USCIS did not make Ms.

---

[11] The AFM also explicitly instructs USCIS officers to provide specific reasons for a conclusion that an applicant is not credible: "If you decide that the statement or testimony of a petitioner or applicant, or of any other witness, is not credible, your written decision should indicate this conclusion. It generally is not enough simply to say that the witness is not credible. Instead, your decision should give the specific reason or reasons for your conclusion, and refer to the elements of the record that support the conclusion." USCIS Adjudicator's Field Manual Ch. 11.1(l). The AFM also notes that "[d]iscrepancies in statements made by a witness do not necessarily discredit the witness. The fact that a witness is sometimes confused and self-contradictory goes only to the weight of testimony, not to the witness' competency. It is to be expected that even an honest witness, in speaking of a past event, will not repeatedly reproduce it in its entirety with unchanged fullness of detail. A variation in recollection does not necessarily damage credibility." *Id.*

Jessop aware of its reliance on the information, much less offer her an opportunity to explain or rebut it.[12] *See* USCIS Credibility Determination, Aug. 19, 2016.

The Government argues the Agency made clear to the Jessops that it did not believe her account of her manner of entry through its Requests for Evidence, and provided Ms. Jessop the opportunity to prove that she had made a procedurally regular admission into the United States. *See* Gov't's Resp. Memo. 9 n.6; Gov't's Letter Br. 3-4, May 18, 2017. The Government further argues the Agency's adjudication does not implicate 8 § C.F.R. 103.2(b)(16)(i), as the Agency did not base its decision on information that was derogatory or of which Ms. Jessop was unaware. Gov't's Letter Br. 4. The Court disagrees.

After Ms. Jessop's August 6, 2014, interview, but before issuing its decision, the USCIS issued a Request for Evidence, and attached to it a written statement by USCIS recounting Ms. Jessop's own account of her entry into the United States as provided to her interviewer. *See* USCIS Request for Evidence, Aug. 26, 2014, USCIS 0029-30. The statement advised Ms. Jessop that she had failed to submit any evidence independent of her own testimony and written statements to support her assertions concerning her manner of entry. *Id.* The statement acknowledges that her narrative of entry, "if accepted as true, would establish the requisite 'procedurally regular' admission to meet the requirement of a lawful admission or parole under INA § 245(a)," and stated she could submit further evidence to support her manner of entry. *Id.*

---

[12] The Agency implied credibility was a concern in its denial decision, as it noted in its restatement of Ms. Jessop's testimony that she "had trouble recalling" the names of the friends with whom she stayed in Canada and Philadelphia and that she did not know where her friend in Philadelphia lived now. USCIS 0025. The Agency also indicated in a footnote that although Ms. Jessop testified that she entered the United States in February or March 2002, she stated in her adjustment of status application that she entered the United States in April 2002.

14

The Court finds the Request for Evidence did not adequately provide Ms. Jessop with notice of the derogatory information on which it would ultimately base its decision, or provide her with an opportunity to rebut that information. *Cf. Venevision Prods. LLC v. Dir., Texas Serv. Ctr.*, No. 16-11990, 2017 WL 603287, at *1-2 (11th Cir. Feb. 15, 2017) (finding petitioners' due process claim based on the USCIS's alleged violation of 8 § C.F.R. 103.2(b)(16)(i) failed where USCIS issued a Notice of Intent to Deny, which "identified several discrepancies" and petitioners were thus "afforded an opportunity to rebut the derogatory evidence that was presented"); *Diaz v. U.S.C.I.S.*, 499 F. App'x 853, 856 (11th Cir. 2012) (holding petitioner's due process rights were not violated by USCIS's refusal to conduct a second interview to clarify discrepancies in the first interview because the Agency complied with 8 § C.F.R. 103.2(b)(16)(i) by issuing petitioner a Notice of Intent to Deny that indicated the petition would be denied based on the discrepancies in the interview, and "specifically gave her the opportunity to provide rebuttal evidence and to explain the discrepancies"); *see also Mangwiro v. Johnson*, 554 F. App'x 255, 261, 261 n.9 (5th Cir. 2014) (noting 8 § C.F.R. 103.2(b)(16)(i) requires USCIS to provide "sufficient information to allow the petitioners to rebut the allegations," such as a "'notice of intent to deny that indicate[s] that [a] petition [will] be denied based on . . . discrepancies in [an] interview'" (quoting *Diaz*, 499 F. App'x at 855-56)); *Maerker v. Ashcroft*, 118 F. App'x 258, 260 (9th Cir. 2004) (finding that any failure on the part of the Immigration and Naturalization Service to provide notice and an opportunity to rebut adverse evidence, pursuant to 8 § C.F.R. 103.2(b)(16)(i), was harmless because the immigration judge provided the petitioner with "ample opportunity to rebut any derogatory evidence").[13] Indeed, it appears

---

[13] The Government argues Ms. Jessop was aware of the information on which the Agency based its decision, as she was the only person the Agency interviewed as part of her application. *See* Gov't's Letter Br. 4, May 18, 2017 (citing *Mangwiro v. Johnson*, 554 F. App'x 255 (5th Cir.

USCIS regularly provides applicants with a Notice of Intent to Deny, allowing them the opportunity to rebut the information upon which the Agency intends to make its decision. *See Diaz v. U.S.C.I.S.*, 499 F. App'x at 856; *Uddin*, 862 F. Supp. 2d at 398-99 (reviewing USCIS's extensive detailing of the discrepancies in applicant's purported manner of entry in its notice of intent to deny and its final denial decision); USCIS Adjudicator's Field Manual Ch. 10.5(b)(4) ("When a preliminary decision has been made to deny an application or petition based on . . . derogatory evidence, USCIS must issue a written notice of a NOID to the applicant[.]"); Pl.'s Letter, May 19, 2017 Ex. 1, USCIS Policy Memorandum 3, ECF 32 ("A NOID is . . . required

---

2014)). In *Mangwiro*, as the Government states, USCIS denied an applicant's petition after interviewing the applicant and his wife separately, finding discrepancies and inconsistencies in their answers, issuing a Notice of Intent to Deny (NOID) the petition that included the discrepancies, and considering the applicant's response to the NOID. 554 F. App'x at 257. The court held USCIS, through the NOID, had provided plaintiffs with adequate notice of the derogatory information on which it relied to deny their claims, as well as with an opportunity to rebut that information, pursuant to 8 § C.F.R. 103.2(b)(16)(i). *Id.* at 261. The Government argues the fact that the Agency in *Mangwiro* relied on discrepancies between the husband's and wife's answers distinguishes that case from the Jessops' case, as the *Mangwiro* spouses "would not necessarily be privy" to the information provided by the other. Gov't's Letter Br. 4, May 18, 2017. The *Mangwiro* court, however, does not make such a distinction, and instead concentrates on the process provided—the NOID identifying the discrepancies and giving the applicant an opportunity to rebut—in holding the plaintiffs were not denied due process. *Mangwiro*, 554 F. App'x at 261. Indeed, several courts have suggested discrepancies in an applicant's own testimony that are relied on to deny an application may be considered derogatory information of which an applicant needs to be apprised. *See, e.g.*, *Venevision Prods. LLC*, 2017 WL 603287, at *1-2; *Diaz*, 499 F. App'x at 856. Other cases cited by the Government pertaining to this issue are distinguishable. *See, e.g.*, *Sardo v. Dep't of Homeland Sec.*, 2008 WL 2596206, at *4 (6th Cir. July 1, 2008) (holding the government's failure to disclose to the applicant the information it had about his prior criminal record before it denied him naturalization did not violate 8 § C.F.R. 103.2(b)(16)(i)); *Herrera v. U.S. Citizenship & Immigration Servs.*, 571 F.3d 881, 889 (9th Cir. 2009) (agency provided applicant with a notice of intent to revoke and a final revocation notice, both indicating that based on statements made during her interview, applicant did not meet the approval requirements for an I-140 petition, and agency did not violate procedures concerning notice by failing to provide applicant with the interviewer's handwritten notes or his internal referral memorandum); *Adi v. United States*, No. 10 CV 00502, 2011 WL 9613, at *7 (N.D. Ohio Jan. 3, 2011), *aff'd*, 498 F. App'x 478 (6th Cir. 2012) (finding USCIS and the BIA had properly disclosed the derogatory information upon which their decisions primarily relied—one of the plaintiff's sworn statements—as plaintiffs had copies of the affidavit).

16

when derogatory information is uncovered during the course of the adjudication that is not known to the individual, according to 8 § C.F.R. 103.2(b)(16). The issuance of a NOID is also appropriate . . . [where] [t]here is little or no evidence submitted[.]"). Such process was not afforded here. The Court therefore finds the Agency's decision failed to conform with the law. *See* 5 U.S.C. § 706(2)(A).

Further, the Court cannot conclude the Agency's procedural violation was harmless. As discussed, in its final decision, the Agency found that although Ms. Jessop's narrative regarding her manner of entry was "plausible[,] . . . it [wa]s equally plausible that [she] crossed the Canadian border into the U.S. in some other way[.]" USCIS 0019. An opportunity to rebut the Agency's credibility finding could have had the effect of tipping the scale in this 50/50 finding.

Most recently, the Jessops argue the Court should hold a hearing or order depositions in order to acquire evidence concerning USCIS's decision-making process rather than remand this matter to USCIS. The Government contends that if the Court finds a violation of 8 § C.F.R. 103.2(b)(16), the proper remedy would be remand.

Although a reviewing court has the power to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), the APA does not apply to the extent "agency action is committed to agency discretion by law," *id.* § 706(2). "[T]he only agency action that can be compelled under the APA is action legally *required*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004) (emphasis in original). Because the decision to grant or deny adjustment of status is discretionary, *see* 8 U.S.C. § 1255(a) (providing the status of an alien "may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence"), the Court finds remand is appropriate here, *see Pinho,* 432 F.3d at 200 n.9 ("Section 1252(a)(2)(B) . . . strips the

17

district courts of jurisdiction over discretionary agency determinations."); *C & S Mfg., Inc. v. Napolitano*, No. 09-653, 2010 WL 571797, at *4 (E.D. Pa. Feb. 18, 2010) (holding that "because the decision of USCIS to grant or deny an application for adjustment of status is discretionary, the "APA does not authorize the Court to compel USCIS to approve [p]laintiffs' . . . I-485 applications"); *see also Song v. Klapakas*, No. 06-5589, 2007 WL 1101283, at *5 (E.D. Pa. 2007) (finding remand to USCIS to adjudicate plaintiffs' adjustment of status applications "the most appropriate resolution of the case because only defendants have the specialized knowledge to adjudicate plaintiffs['] applications").

The Court will therefore remand this case back to USCIS for the reopening of Ms. Jessop's application and its adjudication under proper agency procedure.

An appropriate Order follows.


                                              BY THE COURT:


                                              /s/ Juan R. Sánchez
                                              Juan R. Sánchez, J.